IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. AP-76,594 & AP-76,595





THE STATE OF TEXAS EX REL. CRAIG WATKINS, Relator


v.


THE HONORABLE JOHN CREUZOT, Respondent




ON PETITIONS FOR A WRIT OF MANDAMUS AND


PROHIBITION FROM CAUSE NO. F81-01988-FK IN THE

CRIMINAL DISTRICT COURT NO. 4 OF DALLAS COUNTY




 Price, J., filed a dissenting opinion.


DISSENTING OPINION



 In State ex rel. Lykos v. Fine, (1) this Court held that the State had a clear right to
mandamus relief because the trial court "act[ed] beyond the scope of [its] lawful authority" (2)
in conducting a pretrial hearing to determine whether Article 37.071, Section 2 of the Texas
Code of Criminal Procedure, (3) our capital sentencing statute, could operate in a constitutional
manner as applied to the capital defendant in that case. Today, on authority of Fine, the
Court likewise holds that the trial court altogether lacked authority to grant a capital
defendant's pretrial motion. While I dissented in Fine, even accepting its authoritativeness
for purposes of stare decisis, I now find it distinguishable from the facts of this case. In my
view, the trial court had the authority to rule on the defendant's pretrial motion to preclude
the death penalty, and the ruling that it made does not seem so manifestly incorrect to me as
to be subject to mandamus or prohibition relief. Accordingly, I respectfully dissent.

 In Fine, the real party in interest was John Edward Green, Jr., a capital defendant in
Harris County. In a pretrial motion, he raised a purported "as applied" challenge to the
validity of Article 37.071, Section 2. He argued that, under that provision, "innocent people
have been and will be" executed in Texas. (4) In a hearing on the motion, Green began to
develop testimony to the effect that the type of evidence likely to be adduced in his capital
trial was of a kind that has led to the conviction of innocent defendants across the country. (5) 
The Court held that such evidence is irrelevant to an "as applied" challenge to the death
penalty statute, and that the trial court lacked the authority to hold a hearing for the
presentation of such irrelevant evidence. (6) I do not believe this holding is dispositive of the
instant matter.

 The real party in interest here is Jonathan Bruce Reed, another capital defendant. He
does not purport to challenge the constitutionality of Article 37.071 in any way, shape or
form. Instead, he argues that the passage of twenty-seven years from the time he was most
recently convicted and sentenced to death until his presently scheduled retrial after relief in
federal post-conviction habeas proceedings has prejudiced his ability to investigate and
present substantial mitigating evidence that once existed that would be relevant to persuade
a jury to impose a life sentence. In essence, he asserts that the delay in retrying him, which
he maintains is attributable to the State for aggressively opposing his Batson claim (7) all these
years on appeal, has deprived him of a legitimate defensive posture at the punishment phase
of his capital retrial. Whatever the merits of his claim, I fail to see why the trial court lacked
the authority to entertain it in a pretrial context.

 It seems to me that Reed's claim is almost perfectly analogous to a defendant's pretrial
challenge to an indictment on the basis that delay caused by the State's failure to timely
investigate and initiate the charges against him prejudiced his ability to mount an effective
defense, in violation of his rights under the Due Process Clause of the Fourteenth
Amendment. (8) The United States Supreme Court has clearly recognized such claims before, (9)
as have we. (10) It is true that the Supreme Court has so far reserved the question whether such
claims may be presented and disposed of in a pretrial context. (11) But the Fifth Circuit has
acknowledged that, while such claims might best be carried over to trial so that the degree
of prejudice, if any, caused by a pre-indictment delay might become more evident, trial courts
certainly have the authority to entertain such claims in a pretrial setting, and might
appropriately grant relief in extraordinary cases. (12) In my view, Judge Creuzot had the
authority to entertain Reed's analogous motion, predicated on the Due Process Clause, to
preclude imposition of the death penalty on account of excessive delay.

 Today the Court confidently asserts, as if these propositions were self-evident, that
"[t]he adequacy and efficacy of Reed's mitigation case cannot be judged unless he has
actually been convicted of capital murder and sentenced to death[,]" and that "[a]ny pretrial
determination of that mitigation case is necessarily hypothetical and unlikely to fairly reflect
reality as it plays out in an actual trial." (13) It is not at all clear to me, as a categorical matter,
that the "adequacy and efficacy" of Reed's mitigation case can never be gauged in the course
of a pretrial evidentiary hearing such as Judge Creuzot conducted here. And while we may
question the likelihood that such a pretrial hearing will typically suffice to lay a foundation
for an accurate determination whether a capital defendant has been prevented from
marshaling an effective case for mitigation of the death penalty, I do not think we can say,
categorically, that it is impossible--any more than the Fifth Circuit could categorically say,
in the context of a due process claim predicated on pre-indictment delay, that prejudice can
simply never be determined without first proceeding to trial. (14) That it will often prove
difficult to assess prejudice in a pretrial setting does not mean a trial court lacks all authority
to make the attempt. The Court today goes on to conclude that "there is no basis in Texas
law to conduct a pretrial evidentiary hearing to determine the adequacy of a mitigation case
in a capital-murder proceeding[.]" (15) But the Due Process Clause of the Fourteenth
Amendment is certainly binding on Texas, and I cannot fathom why due process does not
authorize a trial court in a capital murder proceeding to entertain a claim such as Reed's in
the context of a pretrial motion when it has been held to authorize pretrial litigation of a
motion to dismiss an entire criminal prosecution on the basis of prejudice to the defense
allegedly caused by inordinate pre-indictment delay.

 In order to obtain mandamus/prohibition relief, the State must meet two requirements. 
First, it must demonstrate that it has no adequate remedy at law. (16) I have no doubt it has done
so here, for reasons the Court explained in Fine. (17) But second, the State must also show that
the trial court has a ministerial duty to rescind its order, i.e., the State has a clear right to the
relief it seeks. (18) This I do not believe the State has shown. Deciding whether the instant case
presents circumstances so extraordinary as to justify actually precluding the State from
seeking the death penalty requires the exercise of a judicial, not a ministerial, function. I
cannot say--and the Court today does not convince me--that Judge Creuzot was so glaringly
and manifestly wrong to find a due process violation on the facts presented to him that there
is only one way he could rationally exercise his judicial function. (19) In short, though we might
take the view that he was mistaken to grant Reed's motion, if so, it was a mistake of law. 
"While a trial court has a ministerial duty to rule upon a motion that is properly and timely
presented to it for a ruling, in general it has no ministerial duty to 'rule a certain way on that
motion.'" (20) Here, the trial court had the authority to rule on Reed's motion, and he had no
ministerial duty to deny it. For these reasons, I would deny the State's applications for
mandamus and prohibition relief. Because the Court instead grants relief, I respectfully
dissent.


FILED: July 27, 2011

PUBLISH
1. 330 S.W.3d 904 (Tex. Crim. App. 2011).
2. Id. at 919.
3. Tex. Code Crim. Proc. art. 37.071, § 2.
4. State ex rel. Lykos v. Fine, supra, at 906.
5. Id. at 912.
6. Id. at 919.
7. Batson v. Kentucky, 476 U.S. 79 (1986).
8. U.S. Const. amend. XIV, § 1. See generally George E. Dix & John M. Schmolesky, 42
Texas Practice: Criminal Practice and Procedure §§ 28:33 through 28:38 (3d ed. 2011).
9. See United States v. Marion, 404 U.S. 307 (1971); United States v. Lovasco, 431 U.S. 783
(1977); United States v. Gouveia, 467 U.S. 180, 192 (1984).
10. See Spence v. State, 795 S.W.2d 743, 749-50 (Tex. Crim. App. 1990); Ibarra v. State, 11
S.W.3d 189, 193 (Tex. Crim. App. 1999).
11. United States v. Lovasco, supra, at 788 n.7.
12. United States v. Crouch, 84 F.3d 1497, 1516 (CA5 1996). See also State v. Horner, 936
S.W.2d 668, 672 (Tex. App.--Dallas 1996, pet. ref'd) (citing Crouch); Dix & Schmolesky, supra,
§ 28:38, at 720 (such claims are "seldom appropriate for resolution in pretrial motions to dismiss").
13. Majority opinion, at 22.
14. United States v. Crouch, supra.
15. Majority opinion, at 24-25.
16. E.g., State ex rel. Young v. Sixth Judicial District Court of Appeals, 236 S.W.3d 207, 210
(Tex. Crim. App. 2007); Simon v. Levario, 306 S.W.3d 318, 320 (Tex. Crim. App. 2009).
17. State ex rel. Lykos v. Fine, supra, at 912-16.
18. State ex rel. Young v. Sixth Judicial District Court of Appeals, supra; Simon v. Levario,
supra.
19. The Court is mistaken to suggest that Judge Creuzot's judicial determination was necessarily
dictated or circumscribed by the Fifth Circuit's opinion in Reed v. Quarterman, 504 F.3d 465, 484-88 (CA5 2007). See Majority opinion, at 12 (declaring that the Fifth Circuit "rejected Reed's same
claim in 2007"). In the Fifth Circuit, Reed argued that the twelve-year delay from the time of his
1983 trial until this Court's resolution of his direct appeal in 1995 violated due process in that it
somehow prejudiced the direct appeal itself. The Fifth Circuit declined to grant a Certificate of
Appealability with respect to this claim, as a matter of federal habeas corpus review under the
Antiterrorism and Effective Death Penalty Act (AEDPA), because it could find no clear Supreme
Court precedent supporting it, as is required to overcome the extraordinary deference that federal
courts must pay to state court judgments under the AEDPA. Judge Creuzot owed no such deference
to any other judicial entity in deciding the distinct question of whether Reed's due process rights
would be violated by allowing the State to seek the death penalty now, some twenty-seven years
since he was last convicted and sentenced to death.
20. State ex rel. Young v. Sixth Judicial District Court of Appeals, supra (quoting State ex rel.
Curry v. Gray, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987)); Simon v. Levario, supra, at 321
(same).