Mr. Justice Duvall
delivered the opinion of the court. The ship Neptune, owned and commanded by-Captain Myrick, arrived at New-Orleans from. London on the 20th of October, 1815. On the next day he appeared, in company with George M. Ogden, one of the appellants, at the custom house, an<¿ reported the Neptune as a registered vessel of the United States, belonging to. Wilmington North Carolina, where, he alleged, and it was so stated in the manifest, she was registered. He declared, at the same, .time, that he had lost the register in ascending the Mississippi, and required á new one to be issued'in lieu of it. Capta.in Myrick had made a protest before a notary public to that effect, and offered to tqke the oath required by the 13ths section-of the act, entitled, an act 'concerning the registering and recording of ships or vessels, but was taken sick, and, in a few days afterwards, died without taking it.
George M. Ogden administered on the estate 'of Captain Myrick, * and on the 22d of November, the court of probates ordered -a sale of the effects of the intestate, which was made on the 5th of December following, at which sale Messrs. Harrod and Ogdens became the purchasers of the Neptune, for 7,500 dollars.
On the. 12th of January, 1816, Messrs. Harrod and Ogdens addressed a letter to the collector, requesting to be informed whether a register could be granted for the ship Neptune, on the owner® taking the ■ oath prescribed by law. The colléeíor replied, by letter dated the 20th, that a register had been refused the ship Neptune, on the ground that.the oath: offered, to *603 show the loss of a former register was insufficient, inasmuch as it contained an assertion that the register lost was granted at the port of Wilmington in North Carolina, and by a letter from the collector of that •' port, information had been received that no such regis, ter was ever issued from his office. The collector was afterwards examined as a witness in the cause, and declared on oath to the same effect.
George M. Ogd.en, one of the owners, afterwards applied at the collector’s office for a register, offering to take ah oath, the form of which he had prepared, varying from the form of the oath required by law; he was- informed by the collector it was not sufficient, and that unless he would take the oath in the .form prescribed by the registry act, a register could not be granted. Mr. Ogden pressed the form of the oath which he had tendered, -but was again fold it c .'Jd not be received. Mr. Ogden had been shown n'e letter from the collector at Wilmington, and had been informed of its contents by the attorney for the, district. Nevertheless, he appeared in the collectors’s. office on the 22d of January, 1816, and took the oath required by law, relying, as he said, bn the oath which Captain Myrick had taken, as the ground of his oath ; and a register issued in form to the owners, Richard Peniston, master. In 'this oath he deposed, that “being owner in part and having charge of the ship or Vessel called the Neptune, the said ship or vessel had been, as he verily believed, registered according to law by the name-of Neptune, and that a certificate thereof was granted by the collector of the district of Wilmington in the state of *604 North Carolina, which certificate had been lost .and destroyed by accidentally falling overboard in the river Mississippi.”
On the part of the owners, John M’Cauley, mate of the Neptune, deposed, that on her voyage from London to New-Ofleans, he had seen the register of the ship Neptune frequently, and before the issuing .of the new register ne had assured Mr. Ogden he had seen it, and that he. believed it to be dated at Wilmington, North ^Carolina, and that it was lost, by ^accident, from the pocket of' the captain in the river Mississippi; and that he had no reason to doubt it a genuine one. M’Cauley being asked, “Did - captain^ Myrxck tell you on his return from town that he had shown the register' to Messrs. Harrod and Ogdens 1 answered, he fiad laid the pocket book containing it on the desk. The carpenters, who repaired the Neptune, certified that in their opinion, she was built ■in the United States.
The Neptune .cleared out at the custom house of New-Orleans, on the 9th day of February, 1816, when she was immediately seized by the collector, as .forfeited to the United States, and lib.elled for a breach of the 27th section of the act of congress of the 31st of December, 1792, cb. 146. (I.) entitled, “An act concerning the registering and recording of ships or vessels.” Upon these facts, the Neptune together with .her tackle, apparel and furniture, was, by ■ the sentence of the district court, condemned as forfeited to the United States. From this decree the owners appealed to-this court.
*605 The question for the decision of this court must depend upon the true construction of the act before mentioned. If the appellants have, in all respects, complied with the requisites of that act, they have incurred no forfeiture; if any of its provisions,- which inflict a forfeiture of the vessel for a noil-compliance, have been violated, a forfeiture will ensue.
By the first section of the act, it is provided, that ships or vessels of the United States shall not continue to enjoy the benefits and privileges appertaining to such ships or vessels, longer than they shall continue to be wholly owned, and be commanded by a citizen, or citizens, of the United States.
The third section directs that all vessels, thereafter to be registered, shall be registered by the collecter of the district, in which shall be comprehended the port to which the ship or vessel shall belong at the time of her registry; which port shall be deemed to be that at' or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing owner, of such ship or vessel usually resides; and the name of the vessel, and of the port to which she be*longs, shall be painted on her stern.
The fourt section prescribes the substance of ths. oath to be taken in order to the registry, and contains a clause of forfeiture, in case any of the matters of fact, which shall be within the knowledge of the party swearing, shall not be true. The fifth section makes it the duty of all the owners resident within the United States, to take.a like oath within ninety days after the granting the register.
*606 The ninth section directs the collector, of each district to keep a record of all ships and vessels to which registers shall have- been granted, and prescribes the form of the register. The tenth section directs a copy-of each register tobe transmitted to the .register-of the treasury, who shall cause a recoid of them to be kept.
The eleventh section directs the course of proceeding, in case a vessel'be purchased by a citizen'before registry, and contains a clause of forfeiture in case of false swearing.
By the thirteenth section it is enacted, ithat if the . certificate of registry of any vessel shall -be lost, destroyed, or mislaid, the master, or other person having, the charge or command of her, may make oath, or-affirmation, before the collector of the district, where such vessel shall first be, after Such loss or destruction; and the form of the' oath is prescribed. It is an. essential part of the oath', that in it shall be stated the name, oftthe collector,'and the port at which the former register was granted.
The fourteenth section requires, that when a registered vessel shall be sold or transferred to a citizen of the United States, she shall be registered anew by her former name; and if not registered anew, she shall not be entitled to the privilege's or benefits, of a ship of the United States.
By the twenty-seventh section it is provided, that if any certificate of registry or record shall be fraudulently, or lcnowdngly, used for any ship or vessel not then actually entitled to the benefit thereof, according' to the true intent of the act, such ship or vessel shall *607 be forfeited to the United States, with her tackle, ap. parel^ and furniture. ■
In the argument of this case it was admitted by the counsel for the appellants, that the register was improperly obtained, but it was denied that the vessel became thereby forfeited under' the 27th, or any other section of the registry act. And it was contended that thé owner having a register issued by the collector, was proof that’ it was not fraudulently obtained. In support of this position, the case of the Anthony Mangin was cited from 3 Cranch• 337.
To this it was replied, that the appellants purchased the Neptune knowing that she was without.a register. • That it was alleged to have been granted to the former owner by the collector for the port of Wilmington» jn North Carolina, and that it was lost. The appellants knew that information had been received from the collector at "Wilmington, that a register for the Neptune had never been issued at that port;. and that, therefore,, it was fraudulently obtained, and used for the Neptune, not then entitled to the benefit of it.
The case of the Anthony Mangin does not support the argument of the appellant’s counsel. In that case an action was brought by the United States against Grundy and Thornburgh, for money had and received for the use of the United States by the de~ fendants, as assignees of Aquila Brown, junior, a bankrupt, it being money received by the defendants for the sale of the ship Anthony Mangin, •which ship the United States alleged was forfeited by *608 reason that Brown, in order to obtain a register for her as a ship of the United States, had falsely sworn that she was his sole property, when he' knew that she was in part owned by an alien. There was no proceeding in rem against the vessel. It was a suit against the assignees of JBrown for the value of the vessel ; and the court decided that an action for the value could only be supported against the person who had taken the oath.
It is evident from the facts in this case, that George M. Ogden,-when he applied for a register for the Neptune, did not believe that he could with safety take the oath required by law; because he had prepared an path varying in form from the oath required, which he pressed the collector to he permitted to take, hut which the collector refused to administer. And the collector was of opinion, until he consulted the district attorney, that he ought not to he -permitted to take the oath prescribed, as he could not do it without swearing to a fact which was knowrn to be untrue. For this reason he refused to admir ister the oath to Captain Myrick in his life time.
There are' strong grounds for the belief that the Neptune never had a genuine register. She is represented in the manifest to have been built at Boston— to be owned by Captain Myrick of New-York — and that she belonged to the port of Wilmington, in North Carolina. If she had been built at Boston, and belonged at the time to a person residingin New-York, it is more than probable that, pursuant to the provisions of the third section of the act, she would have been registered at one of those places. If Captain Myrick or *609 tbfe present owners had been desirous of obtaining correct information .on the subject, it would have been furnished on application to the treasury depart"' ment. A'l registers are transmitted regularly to the register of the treasury to be registered in his office.
It should be recolleclecf, that the mate of the Neptune testified, that Captain Myrick, after returning from the house of Messrs. IHarrod and Ogdens to his vessel said he had left his pocket-book containing the register on ¡stheir’ desk. Hence, it is rational to Conclude, either that Captain Myrick had no-register, or that if he had one, it would not Lear inspection.
Upon the^whole, the court are of opinion that the register was fraudulently and knowningly used for the Neptune, when she was not entitled to the benefit of it; and that she is forfeited for a violation of the provisions of the 27th section of the registry act ; and that the provisions of that section apply as well to vessels which have not-iJEfén previously registered, as to those to which registers have been pr eviously granted. ,
Decree amrmea-
Decree. — This causé enme on to be heard on the transcript of the record, and was argued by counsel. On consideration whereof, it is decreed and ordered that the decree of the district court of Louisiana in Oliscase be, and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum, in *610 eluding interest on the amount of the appraised- value* of the said ship Neptune, to be computed from the data? of the decree of the said, district courts.