

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,183

### IN RE MORRIS WAYNE SIMON, Relator

### v.

### LENA LEVARIO, 204ᵀᴴ JUDICIAL DISTRICT COURT
### OF DALLAS COUNTY, Respondent

### ON PETITION FOR A WRIT OF PROHIBITION
### IN CAUSE NO. F-08-54622-Q FROM THE 204ᵀᴴ
### JUDICIAL DISTRICT COURT OF DALLAS COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. KELLER, P.J., concurred in the result.

### O P I N I O N

The relator was indicted in Dallas County for the offense of capital murder. The State elected not to seek the death penalty. During pretrial proceedings, the relator "indicated that [he] seeks to present the testimony of a mental health expert in regards to [his] mental state

and the voluntariness of his confession."[1]  In response, the State filed a motion seeking to have the relator evaluated by its own psychiatric expert so that it could be prepared to rebut any expert testimony the relator might offer in a pretrial suppression hearing or at trial.  The trial court granted the State's motion, ordering the relator to submit to an examination by a State-designated expert.  The State's expert was specifically ordered not to interrogate the relator about the facts of the offense itself and not to reveal the results of his examination to the prosecutors unless and until the relator's expert should testify.

The relator has now filed an application for writ of prohibition in this Court, seeking relief from the trial court's order subjecting him to examination by the State's expert.[2]  The relator argues that the trial court's order impinges upon his Fifth and Fourteenth Amendment right to be free from compelled self-incrimination.  He argues that the authorities cited by the State in support of the trial court's order are factually distinguishable from his case, and that none expressly permits the examination by a State's expert under the circumstances presented here.  Because we find that the relator has failed to satisfy at least one of the criteria for obtaining extraordinary relief, we deny his application.

---

[1]
 Application for Writ of Prohibition, at 2.

[2]
 The relief that the relator seeks is more in the nature of a writ of mandamus than a writ of prohibition, since he would have us "undo" an "accomplished judicial act." *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985).  That being the case (and unlike the case with respect to writs of prohibition), we could simply have dismissed the application for failure to present it first to the appropriate court of appeals.  *Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003).  Regardless of whether we characterize it as a writ of prohibition or a writ of mandamus, however, we will dispose of the relator's application against him on another basis.

## STANDARD FOR EXTRAORDINARY RELIEF

The traditional test for determining whether mandamus or prohibition relief is appropriate requires the relator to establish two things.[3] First, he must show that he has no adequate remedy at law to redress the harm that he alleges will ensue if the act he wishes to prohibit is carried out.[4] Second, he must show that the act he seeks to compel or prohibit does not involve a discretionary or judicial decision.[5] If the relator fails to satisfy either aspect of this two-part test, then relief should be denied. As to the latter requirement, we have said that it is satisfied if the relator can show he has "a *clear* right to the relief sought"–that is to say, "when the facts and circumstances dictate but one rational decision" under unequivocal, well-settled (*i.e.*, from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.[6]

While a trial court has a ministerial duty to rule upon a motion that is properly and

---

[3] The standards for mandamus and prohibition relief are essentially the same. *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985).

[4] *Id*. at 898-99; *Ex parte Chi*, 256 S.W.3d 702, 703 (Tex. Crim. App. 2008).

[5] *E.g., De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004).

[6] *State ex rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007); *Buntion v. Harmon*, 827 S.W.2d 945, 947, 948 n.2 (Tex. Crim. App. 1992). Stated another way, an act may be regarded as "ministerial" when the facts are undisputed and, given those undisputed facts, "the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the exercise of discretion or judgment." *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (quoting *Texas Dept. of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex. Crim. App. 1981)).

timely presented to it for a ruling, in general it has no ministerial duty to "rule a certain way on that motion."[7] By this we mean that mandamus or prohibition will not lie to "compel the trial court 'to rule a certain way' on an uncertain and unsettled issue the resolution of which involved a fair amount of discretion."[8] In short, it is improper to order a trial court to exercise its judicial (as opposed to its ministerial) function in a particular way unless the relator has a "clear right to the relief sought," i.e., the law he invokes is definite, unambiguous, and unquestionably applies to the indisputable facts of the case. Even when the facts are undisputed, the extraordinary mechanism of a writ of prohibition or mandamus will not lie to resolve "a hotly contested unsettled 'question of law'[.]"[9]

## APPLICATION OF LAW TO FACT

For the proposition that it should be allowed to have its expert examine the relator, the State invoked our opinion in *Lagrone v. State*.[10] The relator argues that *Lagrone* is distinguishable because there, the defendant proposed to introduce expert testimony with respect to the issue of future dangerousness in a capital case in which the State sought the death penalty. The State responds that the particular factual context matters little—the

---

[7] *State ex rel. Curry v. Gray*, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).

[8] *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 n.3 (Tex. Crim. App. 2003).

[9] *State ex rel. Wade*, *supra*, at 898.

[10] 942 S.W.2d 602, 609-12 (Tex. Crim. App. 1997).

principle is the same, namely, that once a criminal defendant constructively testifies by submitting to an examination in support of his own testifying expert's opinion, he has waived his Fifth and Fourteenth Amendment privilege against self-incrimination, and so must choose either to submit to an examination by the State's expert as well or else have his own expert's testimony excluded from evidence.

In support of its argument, the State cites this Court's unpublished opinion in *Ward v. State*.[11] There we unanimously held, citing *Lagrone* and *Chamberlain v. State*,[12] that the operative principle was one of waiver of the Fifth and Fourteenth Amendment privilege, and that it was not limited to the factual context of rebutting expert testimony from the defense with respect to future dangerousness. We articulated the principle thus:

> [I]f a defendant breaks his silence to speak to his own psychiatric expert and introduces that testimony which is based on such interview, he has constructively taken the stand and waived his fifth amendment right to refuse to submit to the state's psychiatric experts. The focus is on the defendant's choice to break his silence. * * * The issue is whether the psychiatric testimony he intended to introduce was based on his own participation in the psychiatric testing and examination.[13]

Focusing on the waiver, we held that the holding of *Lagrone* applied equally to psychiatric evidence in mitigation of the death penalty. "The nature of the psychiatric testimony to be

---

[11] *Ward v. State*, 2007 WL 1492080 (Tex. Crim. App., No. AP-74,695, delivered May 23, 2007) (not designated for publication).

[12] 998 S.W.2d 230 (Tex. Crim. App. 1999).

[13] *Ward*, *supra* (slip op. at 6).

presented is immaterial—that it is being presented by the defendant is enough to trigger the rule."[14] We deemed this principle sufficiently unremarkable that we did not even see fit to designate our opinion for publication.

We do not now rely on our unpublished opinion in *Ward* for the proposition that the trial court did not err to grant the State's motion for its own psychiatric examination in the factual context of this non-death capital prosecution. But we do regard it as ample evidence that the issue is—at best—an "unsettled" legal question. If what we said in *Lagrone* is not limited in principle to the type of psychiatric evidence presented at the punishment phase of a death-penalty case, it may not be limited in principle to the punishment phase of a capital murder death-penalty trial, or even to death-penalty cases at all. Accordingly, we cannot say under the circumstances of this case—and particularly in view of the tight restrictions the trial court imposed on the State in its order—that the relator has established a clear right to be insulated from examination by a State's psychiatric expert.[15] In granting the State's

---

[14] *Id*. (slip op. at 7).

[15] In his brief in support of his application for writ of prohibition, the relator argues that, in the non-death-penalty context, we should not regard the State's interest in rebutting defense psychiatric testimony to be sufficiently compelling to outweigh the accused's constitutional privilege against self-incrimination. Brief in Support of Application for Writ of Prohibition, at 4-10. Even assuming that such a balancing approach is consistent with the constructive waiver principle we have articulated in our case law (a proposition that is *at least* debatable), and that we might tentatively agree that the balance should tip in the relator's favor, his contention amounts to no more than an argument for why the unsettled question should ultimately be resolved in his favor. There is no statute or court opinion that yet says so, as the relator's counsel conceded ("I have not found any law on it one way or the other") at the hearing on the State's motion. The relator's argument falls far short of establishing the necessary "clear right" to relief.

motion in this case, the trial court exercised a manifestly judicial (and not a ministerial) function.[16]  Such an "accomplished *judicial* act" is not subject to the extraordinary remedy of prohibition.[17]

For this reason, we deny the relief that the relator seeks.

Delivered:    November 18, 2009
Publish

---

[16]  The trial court had both subject matter jurisdiction and jurisdiction over the person, we presume, by virtue of the indictment—at least the relator does not argue otherwise.  Under some circumstances, we have observed, even a trial court with general jurisdiction may lack *authority* to take a certain action, and sometimes that lack of authority will render its purported action "void." *State v. Moore*, 225 S.W.3d 556, 568 n.47 (Tex. Crim. App. 2007), citing *Davis v. State*, 956 S.W.2d 555, 559 (Tex. Crim. App. 1997).  We have occasionally granted extraordinary relief when a trial court with general jurisdiction has nevertheless acted in the absence of authority. *E.g.*, *Stearnes v. Clinton*, 780 S.W.2d 216, 223 (Tex. Crim. App. 1989) (trial judge who presided over capital murder trial lacked "the inherent power" to remove court-appointed counsel under the circumstances and therefore acted "without authority"; therefore, his order removing counsel from the case was subject to mandamus relief).  A trial court has no discretion to act where it lacks authority.  But that is not the relator's argument here.  The relator argues that we should not regard the State's interests in rebuttal as weighty enough in the procedural posture of this case to trump his constitutional privilege absent express legislation to implement an order such as the one at issue here, *see* note 15, *ante*, and thus challenges the *correctness* of the trial court's ruling.  He never expressly argues, however, that, in the absence of specific legislation, the trial court categorically lacked authority to rule on the State's motion.  Indeed, his argument seems to concede that a trial court may grant such a motion (as did the trial courts in *Lagrone*, *Chamberlain*, and *Ward*) so long as the balance between the State's interest and his constitutional privilege ultimately tips in the State's favor.

[17]  *State ex rel. Wade*, *supra*, at 897 (emphasis added).