

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-75,835-02

### In Re HECTOR ROLANDO MEDINA, Relator

## ON APPLICATION FOR WRIT OF PROHIBITION IN CAUSE NO. W07-32923-S(A) IN THE 282nd JUDICIAL DISTRICT COURT DALLAS COUNTY

NEWELL, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, JOHNSON, KEASLER, HERVEY, RICHARDSON, and YEARY, JJ., joined. JOHNSON, J., filed a concurring opinion. ALCALA, J., filed a dissenting opinion.

### O P I N I O N

"No person . . . shall be compelled in any criminal case to be a witness against himself . . ." U.S. Const. Amend. V.

Under the plain text of the Fifth Amendment to the United States Constitution, a defendant has a clear right to prevent the State from forcing him to testify at his trial or at sentencing. But what happens when the defendant's trial is over, his conviction is final, and his testimony would no longer subject him to criminal liability? This was the question presented to the trial court in this case. Is the State, in a post-conviction evidentiary hearing

on a writ of habeas corpus, clearly prohibited from calling the writ applicant to testify– under a grant of both use and derivative-use immunity– about whether he was aware of and agreed to trial counsel's strategy at the punishment stage of his capital-murder trial? If this Court were considering the question in the first instance, the answer might very well be "no." But because this case comes before us as a writ of prohibition, we are not asked to decide the precise scope of the Fifth Amendment's protection.[1]

Instead, we are asked to decide whether the trial court made a judicial decision or a ministerial one. More specifically, we must determine whether the law on this issue is *so* clear that the trial court had no choice but to prohibit the State from calling relator to the stand. Examining the relevant case law regarding the scope of the Fifth Amendment from the United States Supreme Court and this Court reveals arguments to support the positions of both relator and the State. Consequently, we cannot say that the trial court had a ministerial duty to prohibit the State from calling relator to testify. Therefore, we must deny the writ of prohibition.

### Factual & Procedural Background

Relator was convicted of capital murder for killing his two children, Javier and Diana

---

[1] It is worth noting that cases from both this Court and the United States Supreme Court have used the words "privilege" and "right" interchangeably when discussing the scope of the Fifth Amendment's protections. Presumably, this is because the Fifth Amendment enshrined the common-law privilege against self-incrimination as a constitutional right. *See United States v. Hubbell*, 530 U.S. 27, 49-53 (2000) (Thomas, J., concurring) (setting out the history of the Fifth Amendment right against self-incrimination). Any reference in previous cases to the Fifth Amendment "privilege against self-incrimination" is not intended to diminish this constitutional provision's status as a constitutional right.

Medina. During the punishment phase of the trial, one juror was allowed to be absent for two days to attend his daughter's labor induction, while another broke her arm in the court parking lot. The trial court indicated that it would grant a continuance to accommodate these juror absences, but relator's lead trial counsel objected on the ground that several out-of-country witnesses would be unavailable if the trial were postponed for a week. On September 16, 2008, the trial court granted a continuance and denied lead trial counsel's motion for mistrial. The trial court released the jurors without setting a return date and denied lead trial counsel's subsequent motion to withdraw as counsel.

The trial court later set October 27, 2008 as the date to resume the punishment phase of the trial. Relator's lead trial counsel filed a motion for continuance on October 20, 2008 again alleging that several defense witnesses would be unavailable for trial. The trial court denied the motion for continuance. Lead trial counsel then filed a motion to withdraw alleging that the trial court's actions were making her render ineffective assistance of counsel. She indicated to the trial court that she did not intend to present any evidence on relator's behalf at the punishment phase of his death-penalty trial. Lead trial counsel also filed motions to recuse the trial court as well as the Dallas District Attorney's Office, and she filed a final motion for continuance. The trial court denied all these motions.

Thereafter, lead trial counsel refused to participate in relator's trial. The trial court warned relator's lead counsel that refusing to participate would result in the trial court holding her in contempt of court. The trial court subsequently held relator's lead counsel in

contempt and took her into custody. The trial court released her later that day, prior to the jury-charge conference and punishment argument. The jury answered the special issues pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set punishment at death. The State subsequently filed a grievance against lead trial counsel with the State Bar of Texas based upon trial counsel's failure to inform or consult with relator regarding participation in the punishment phase of the trial.

Relator's conviction was affirmed on direct appeal. *See Medina v. State*, No. AP-76,036, 2011 WL 378785 (Tex. Crim. App. Jan. 12, 2011) (not designated for publication). On direct appeal, we rejected relator's claim that he had received ineffective assistance of counsel during the punishment phase of his trial because the claim was not factually developed. *Id.* at *31. The case became final on March 21, 2011 when this Court issued its mandate.

Relator's first writ attorney filed an application for writ of habeas corpus that was only four pages long and merely stated factual and legal conclusions. *Ex parte Medina*, 361 S.W.3d 633, 635 (Tex Crim. App. 2011). This Court determined that writ counsel had intentionally filed insufficient pleadings in order to force the Court to readdress its pleading requirements. *Id.* Writ counsel acknowledged that he had frequently discussed his plan with relator, but proceeded even though relator was not happy about it. *Id.* at 636. According to writ counsel, the strategy was in relator's best interest and in the best interest of similarly situated death-row inmates because pleading evidence in briefing in the initial application

for a writ of habeas corpus promotes disposition without evidentiary hearings. *Id.* This Court held that relator failed to timely file a cognizable writ application, thereby authorizing him to file an initial application for writ of habeas corpus. *Id.* at 643. We then appointed the Office of Capital Writs to represent relator. *Id.*

The Office of Capital Writs filed an initial writ of habeas corpus application in the convicting court on relator's behalf on June 5, 2012. Counsel raised several *Cronic-* and *Strickland*-based claims of ineffective assistance predicated on trial counsel's abandonment of the adversarial testing of the State's punishment case. The habeas judge issued an order designating those claims for further development and held a hearing on August 8, 2013. Following the hearing, the State noticed its intent to call relator as a witness at the evidentiary hearing scheduled for January, citing this Court's opinion in *Cannon v. State*, 252 S.W.3d 342 (Tex. Crim. App. 2008).[2]

In documents filed with the habeas judge, relator objected to being forcibly called as

---

[2] Cannon's defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, so that there was a constructive denial of the assistance of counsel altogether, and prejudice was therefore legally presumed. In *Cannon* we stated:

> We are not persuaded by the State's argument that holding as we do today will encourage other defense counsel to engage in the conduct condemned. Under the Disciplinary Rules of Professional Conduct, every defense counsel owes to his client his zealousness, competence, and diligence. A defense counsel failing in those obligations opens himself up to disciplinary proceedings as well as a civil suit for malpractice. Furthermore, a trial court can meet the threat of attorney non-participation by ascertaining whether the defendant understands the implications and probable consequences of his counsel's conduct and whether the defendant is knowingly, intelligently, and voluntarily waiving his right to the effective assistance of counsel.

*Id.* at 352.

a witness against his own interests. Relator argued that (1) being forced to testify violated his rights under the Fifth Amendment; (2) his testimony was not relevant to whether he received ineffective assistance of counsel; and (3) this Court's opinion in *Cannon* does not require him to testify at the upcoming hearing. Relator also argued that the State had no good-faith basis to question him given the State's assertion in the state-bar grievance filed against trial counsel in June 2009 that trial counsel failed to inform or consult with relator about her decision not to participate in the punishment phase of trial. The habeas judge heard argument on relator's objection on the afternoon of January 13, 2014.

The State admitted during the January hearing that calling a defendant to the stand was "a really novel area" and that "this is basically unprecedented. The only precedent we have is *Cannon* . . . from the CCA." The State explained that, in every case in which a defendant raises an IAC claim, the State is permitted to call the defendant to the stand for questioning.[3] However, the State indicated that the trial court did not have "much of anything to hold over [relator's] head" if relator chose not to testify after being called to the stand. The State sought only the ability to draw adverse inferences from relator's refusal to answer particular questions regarding whether relator knowingly acquiesced to trial counsel's strategy and whether that constituted a waiver of effective assistance of counsel.

---

[3] We do not adopt the State's broad reading of *Cannon* in this case. We have held, in the context of a motion for new trial, that asserting a claim of ineffective assistance of counsel waives the attorney-client privilege and trial counsel may be questioned about his actions. *State v. Thomas*, 428 S.W.3d 99, 106 (Tex. Crim. App. 2014); *See also Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). But we have not held that a claim of ineffective assistance of counsel waives the Fifth Amendment right against self-incrimination, and we do not need to reach that holding to decide this case.

The habeas judge seemed to believe that a defendant could not waive his right to the effective assistance of counsel. However, he indicated that the State would be permitted to examine relator if it offered him use and derivative-use immunity, which the State promptly did. The habeas court entered a written order granting relator both use and derivative-use immunity. This grant of immunity prevents the State from using both relator's testimony and any information gained from that testimony in a future prosecution or any proceeding other than this hearing on the post-conviction writ application. *See Kastigar v. United States*, 406 U.S. 441, 453 (1972) ("We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege."). The habeas judge also indicated that he would not allow the State to question relator about "anything and everything," as he would entertain objections to questions that fell outside the scope of relator's claims of relief. The State responded by agreeing that it had no intention of questioning relator about the facts of the offense itself.

When the State called relator to the stand, habeas counsel objected and filed the application for writ of prohibition that is currently before this Court. This Court stayed the proceedings with regard to relator's forced testimony only and invited responses from the State and the habeas judge. *In re Medina*, No. WR-75,835-02, 2014 WL 260176 (Tex. Crim. App. Jan. 15, 2014) (not designated for publication). This Court received a response from the State and a reply to the State's response filed by habeas counsel. No response was

received from the habeas judge.

## General Mandamus/Prohibition Principles

A writ of prohibition must meet the same standards as a writ of mandamus, the former being used to "prevent the commission of a future act whereas the latter operates to undo or nullify an act already performed . . . ." *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985). To merit relief through a writ of prohibition, an applicant must first show that the act he wishes the higher court to restrict "does not involve a discretionary or judicial decision." *Simon v. Levario*, 306 S.W.3d 318, 320 (Tex. Crim. App. 2009). Second, an applicant must show that he has no adequate remedy at law. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007). "In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate." *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987). Equitable principles are necessarily involved when we consider whether mandamus or prohibition should issue. *Id.* The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought because the facts and circumstances dictate but one rational decision under unequivocal, well-settled, and clearly controlling legal principles. *In re Bonilla*, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014). As Professors Dix and Schmolesky have pointed out, this Court has discussed the ministerial duty in terms of the respondent's authority or jurisdiction: "If a trial judge lacks authority or jurisdiction to take

particular action, the judge has a 'ministerial' duty to refrain from taking that action, to reject or overrule requests that he take such action, and to undo the action if he has already taken it." 43B GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 61.29 (3d ed. 2011).[4]

In this case, the State agrees that relator has no other vehicle for obtaining relief. There is no procedural mechanism to appeal the adverse ruling that the Fifth Amendment does not prevent relator from being called to the stand at his own Article 11.071 hearing. *See e.g. In re McCann*, 422 S.W.3d 701, 710 (Tex. Crim. App. 2013) (ability to seek relief from contempt order through writ of habeas corpus not adequate to address underlying issue of trial court's order compelling attorney to turn client's trial file over to successor attorney). The only question before us, then, is whether the ministerial-act requirement is satisfied.

We have recently recognized that "an issue of first impression can sometimes qualify for mandamus relief when the factual scenario has never been precisely addressed but the

---

[4] We have held, for instance, that a trial judge does not have legal authority to: order DNA testing where applicant has failed to meet the requirements of the DNA testing statute, *State v. Patrick*, 86 S.W.3d 592, 594–95 (Tex. Crim. App. 2002) (plurality op.); allow a camera in the jury room, *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 202–03 (Tex. Crim. App. 2003); conduct a pretrial evidentiary hearing to determine the "as applied" constitutionality of a state penal or criminal-procedural statute, *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 919 (Tex. Crim. App. 2011); conduct a pretrial evidentiary hearing to determine the adequacy of a mitigation case in a capital-murder proceeding or make a pretrial declaratory judgment that the State should be forbidden from seeking the death penalty in a capital-murder trial, *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 506 (Tex. Crim. App. 2011); or refuse to submit jury instruction on the "intent to promote or assist" theory of the law of parties and require the submission of the conspiracy theory of the law of parties without any manner-and-means restriction in capital-murder trial, *In re State ex rel. Weeks*, 391 S.W.3d 117, 126 (Tex. Crim. App. 2013). We have, however, recently declined to grant a writ of prohibition to stop a trial court from making a pre-trial determination in a death-penalty case on the issue of the defendant's mental retardation because the law on that issue was unsettled. *In re Allen*, 462 S.W.3d 47, 54 (Tex. Crim. App. 2015).

principle of law has been clearly established." *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). While this case does present an issue of first impression, relator is entitled to relief only if the principle of law he relies upon is "positively commanded and so plainly prescribed under the law as to be free from doubt." *In re Allen*, 462 S.W.3d 47, 50 (Tex. Crim. App. 2015). If the State were attempting to call relator to the stand during either the guilt or sentencing phases of his trial, that would certainly violate a clear principle of law, even though no one seems to have litigated that precise factual scenario. *See e.g., Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) ("The defendant has a separate Fifth Amendment privilege not to testify at either the guilt or punishment phases of trial."). But relator seeks to assert his Fifth Amendment right to prevent questioning about his communications with trial counsel after relator's sentence has been fixed, his conviction has become final, and he no longer faces further criminal liability for the offense that gave rise to the post-conviction hearing. Not only has his case become final, the grant of use and derivative-use immunity prevents any future criminal prosecutions based upon any information gained from the questions co-extensive with the scope of the Fifth Amendment.[5] *Kastigar*, 406 U.S. at 453. So the question remains whether the Fifth Amendment positively commands the relief relator seeks in this post-conviction hearing.

**The Fifth Amendment**

---

[5] From the terms of the immunity order and the representations of the State to the trial court, we understand the grant of both use and derivative use immunity prevents the State from using relator's testimony and any information gained from relator's testimony in any future criminal proceeding including possible re-trial should this Court ultimately grant relief on relator's writ of habeas corpus application.

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"[6] The United States Supreme Court explained the purpose and origin of the Fifth Amendment in *Doe v. United States*:

> Historically, the privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. Such was the process of the ecclesiastical courts and the Star Chamber–the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses without evidence from another source. The major thrust of the policies undergirding the privilege is to prevent such compulsion. The Self-Incrimination Clause reflects "a judgment . . . that the prosecution should [not] be free to build up a criminal case, in whole or in part, with the assistance of enforced *disclosures* by the accused."

487 U.S. 201, 212 (1988) (*citations omitted*). The scope of the Fifth Amendment is comprehensive, protecting the individual not only against being involuntarily called as a witness against himself in a criminal prosecution, but also permitting him "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Any invocation of the Fifth Amendment right must be viewed liberally and in the light most favorable to its legitimacy. *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

Yet despite its cherished position, the Fifth Amendment addresses only a relatively narrow scope of inquiries. *Garner v. United States*, 424 U.S. 648, 655 (1976). "Unless the

---

[6] Similarly, the Texas Constitution Article I § 10 states that "[i]n all criminal prosecutions the accused . . . shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both[.]"

government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise." *Id.* As the United States Supreme Court has explained:

> [T]he question in a criminal case is not whether the defendant committed the acts of which he is accused. The question is whether the Government has carried its burden to prove its allegations while respecting the defendant's individual rights. The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege.

*Mitchell v. United States*, 526 U.S. 314, 330 (1999). But once direct appeals are over, the defendant loses his right to assert his right against self-incrimination as to that specific crime. *Id.* at 326 ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.").[7]

Indeed, the existence of a lawful conviction and incarceration necessarily places limitations upon the exercise of a defendant's right against self-incrimination. *McKune v. Lile*, 536 U.S. 24, 38 (2002). For example, in *Baxter v. Palmigiano*, the United States Supreme Court recognized that prison officials could use a defendant's silence against him at a prison disciplinary hearing in which that silence could not be used as evidence in any

---

[7] *See State v. Barone*, 986 P.2d 5, 21 (Or. 1999) (relying on *Mitchell* to hold that witness's intention to seek post-conviction relief did not revive his privilege against self-incrimination; witness "could not incriminate himself further by answering questions about a crime for which he already had been convicted and sentenced and for which his direct appeals were exhausted"). *Contra James v. State*, 75 P.3d 1065, 1072 (Alaska Ct. App. 2003) (defendant had a valid Fifth Amendment right not to be compelled to discuss facts surrounding the charge for which he had been convicted while his collateral attack was pending in part because if he were successful in that application, he could obtain a new trial, and those statements could then be used against him).

other pending criminal proceeding. 425 U.S. 308, 317 (1976). There, the State notified the inmate that he could remain silent if he chose to, but also that his silence could nevertheless be used against him at the proceeding. *Id.* Additionally, the defendant's silence by itself was insufficient to support an adverse decision by the Disciplinary Board. *Id.* According to the Court, this was not "an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege." *Id.* at 318. As the Court later observed in *McKune v. Lile*, "The inmate in *Baxter* no doubt felt compelled to speak in one sense of the word. The Court, considering the level of compulsion in light of the prison setting and the State's interests in rehabilitation and orderly administration, nevertheless rejected the inmate's self-incrimination claim." 536 U.S. at 38.

Similarly, the Court recognized that, even though a defendant does not lose his Fifth Amendment protection due to his conviction for a crime, the focus of the right necessarily shifts away from a crime that has resulted in a conviction to protection from future criminal prosecutions. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). As the Court explained, "[A] defendant does not lose [his Fifth Amendment right] by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime *other than that for which he has been convicted*." *Id*. at 426 (emphasis added). Significantly, the Supreme Court clarified that questions relating to probation conditions rather than criminal acts would not implicate the Fifth Amendment

provided the threat of revocation did not coerce the probationer to reveal information that could be used in a future criminal proceeding. *Id.* at 435 n. 7. As the Supreme Court observed, "A state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding." *Id.* The Court went on to explain that "nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of factors to be considered by a finder of fact' in deciding whether other conditions of probation have been violated." *Id.*

This Court has recognized as much when considering whether a defendant could be forced to participate in a sex-offender treatment program as a condition of probation. When a defendant is threatened with punishment for relying upon his Fifth Amendment right, his statements become inadmissible in a future criminal prosecution. *Chapman v. State*, 115 S.W.3d 1, 7 (Tex. Crim. App. 2003). Relying upon the Supreme Court's "penalty" jurisprudence, we noted that the threat of probation revocation in the face of an invocation of the Fifth Amendment could deprive a defendant of his free choice to admit, to deny, or to refuse to answer. *Id.* Or, as we explained more simply in *Dansby v. State*, a probationer may be compelled to appear and give testimony about matters relevant to his probationary status, but he cannot be required to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Dansby v. State*, 398 S.W.3d 233,

240 (Tex. Crim. App. 2013) (quoting *Murphy*, 465 U.S. at 436).

But we have also held that the Fifth Amendment is not implicated where the compelled statements can no longer result in criminal liability. *Ex parte Dangelo*, 376 S.W.3d 776, 781 (Tex. Crim. App. 2012). In *Dangelo*, the defendant pleaded guilty to one count of injury to a child in exchange for the State abandoning four other charged offenses. *Id.* at 777. The defendant sought to assert his Fifth Amendment right to avoid being compelled to admit to any sexual offense, including the offenses the State had abandoned, during the course of a sexual-offender treatment program. *Id.* at 777-78. This Court held, in a unanimous opinion, that the defendant could not rely upon the Fifth Amendment to prevent discussion of the facts of the abandoned crimes because double jeopardy prevented them from being used in a future criminal prosecution. *Id.* at 781.

Notably, Judge Cochran wrote a concurring opinion, joined by Judges Hervey and Alcala, to explain that a defendant could be compelled to discuss the facts related to the abandoned counts so long as the State granted the probationer derivative-use immunity before compelling any answer. *Id.* at 783 (Cochran, J., concurring). As Judge Cochran wrote: "[A]ppellant has lost the Fifth Amendment privilege for the injury-to-a-child offense for which he has been placed on deferred adjudication probation and for the specific counts to which jeopardy attached at the time of his guilty plea. For those discrete and specific offenses, he must answer." *Id.*

This position is consistent with the seminal "penalty" case, *Griffin v. California*, 380

U.S. 609, 610 (1965). In *Griffin*, the State sought a jury instruction (pursuant to a California statute) allowing the jury to draw an adverse inference from the defendant's refusal to testify during the guilt phase of trial. *Id.* at 610 (1965). The United States Supreme Court held that the Fifth Amendment prohibited not only this instruction but also any comment by the State on the failure of the defendant to testify in his own defense. *Id.* at 614. According to the Court, commenting upon a defendant's decision not to testify amounted to a penalty upon the defendant's exercise of his Fifth Amendment right because the adverse inference undermined the defendant's presumption of innocence. *Id.* at 613-14. In contrast, a defendant who has been finally convicted no longer enjoys a presumption of innocence with regard to that conviction. *Herrera v. Collins*, 506 U.S. 390, 399 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.").

Finally, this Court has also held that the "offensive use" of a privilege can result in the constructive waiver of it. When a defendant presents evidence through a psychological expert who has examined him, the government is likewise permitted to use the only effective means of challenging that evidence: testimony from an expert who has examined him. *Soria v. State*, 933 S.W.2d 46, 57 (Tex. Crim. App. 1996); *see also Kansas v. Cheever*, 134 S.Ct. 596, 602 (2013). Thus, a trial court may order a defendant to submit to a state-sponsored psychiatric examination if the defendant introduces or *plans* to introduce his own future-dangerousness expert testimony. *Lagrone v. State*, 942 S.W.2d 602, 611 (Tex. Crim. App.

1997).

Similarly, a defendant waives the attorney-client privilege when he argues that his sentence should be overturned because his counsel was constitutionally ineffective. *State v. Thomas*, 428 S.W.3d 99, 106 (Tex. Crim. App. 2014). The rationale behind this rule was best explained by the Texas Supreme Court in *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (1985). According to our sister court, "[a] plaintiff cannot use one hand to seek affirmative relief in court and with the other hand lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Id.* (quoting *Pavlinko v. Yale-New Haven Hosp.*, 470 A.2d 246 (1983)). Though this holding addressed only the attorney-client privilege, the rationale was based upon cases that rejected attempts to use the Fifth Amendment right in a similar fashion. *Id.* at 107-108; *see also United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J., concurring) (protective shield of the Fifth Amendment should not be converted into a sword). And while the Supreme Court of Texas applied the "offensive use" doctrine in a civil proceeding, this Court has applied it to claims of ineffective assistance of counsel in criminal cases as well. *Thomas*, 428 S.W.3d at 106.

## Is there a clear right to relief?

We conclude that, in the context of the specific facts presented here, relator is not clearly entitled to the relief he seeks. Although Texas has no rule of criminal procedure that contemplates calling a habeas petitioner to the stand at an evidentiary hearing relating to his

petition, the State is correct that Texas law does not expressly prohibit the habeas court's action.[8]  Article 11.071 § 9(a) gives the habeas judge the discretion to resolve fact issues through an evidentiary hearing with live testimony from witnesses.  As the above cases demonstrate, the applicability of the Fifth Amendment turns less upon the type of proceeding and more upon the potential for exposure to criminal liability.[9]  If there is no danger of incrimination from the testimony, the Fifth Amendment is inapplicable.  When a defendant no longer enjoys a presumption of innocence and he or she is protected in any future proceeding by both use and derivative-use immunity, drawing an adverse inference from the invocation of the Fifth Amendment does not penalize the assertion of the right.[10]  And he or she may be said to have constructively waived the right if he or she seeks to use the Fifth Amendment in an offensive, rather than defensive, manner.

---

[8] Some states have been explicit on this issue when crafting their procedures.  For example, Alabama Rule of Criminal Procedure 32.9(b) provides that in a post-conviction evidentiary hearing: "[T]he petitioner may be called to testify at the hearing by the court or by either party."  But in contrast, New Mexico's Rule 5-503 categorically prohibits deposing a criminal defendant.  *Allen v. LeMaster*, 267 P.3d 806, 811 (N. M. 2011).  Texas statutes, however, are silent in that regard.  *See e.g.,* TEX. CODE CRIM. PROC. ANN., ART. 39.02 (West 2013).  These conflicting approaches further demonstrate how the law is unsettled on this issue and could be easily resolved by our legislature.  *In re Allen*, 462 S.W.3d at 54.

[9] The dissent argues extensively that we should, as a matter of state law, treat this proceeding as part of relator's "criminal case."  Yet, even the dissent acknowledges that whether this proceeding is characterized as a "criminal case" is not dispositive.  Dissent op. at p. 11.  Contrary to the dissent's assertions, we are not holding that an applicant loses his Fifth Amendment right against self-incrimination when his conviction becomes final because habeas corpus proceedings are civil in nature.  We simply hold that we cannot grant a writ of prohibition because the law is unclear regarding the scope of the Fifth Amendment's protection under the specific facts of this case.

[10] The dissent's contention that questioning relator would subject him to a risk of criminal liability seems to assume the grant of immunity in this case is insufficient to provide Fifth Amendment protection.  Both the United States Supreme Court and this Court have rejected this argument.  *Kastigar*, 406 U.S. at 453; *Ex parte Wilkinson*, 641 S.W.2d 927, 930 (Tex. Crim. App. 1982).

Notably, a defendant seeking habeas corpus relief from a final conviction no longer enjoys a presumption of innocence. *Herrera*, 506 U.S. at 399; *Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000) ("[A]n applicant for the post-conviction writ of habeas corpus enjoys neither a presumption of innocence nor a constitutional right to be present at a hearing."). As we have observed (in the context of a death-penalty writ of habeas corpus), the applicant is actually in the opposite position because "there exists a presumption of regularity of the judgment which can only be overcome by the petitioner's showing that there is substantial evidence to the contrary." *Mines*, 26 S.W.3d at 914 n. 25 (quoting *Ex parte Young*, 479 S.W.2d 45, 47 (Tex. Crim. App. 1972)). It has been recently argued that, in a death-penalty case, the statutory post-conviction habeas corpus remedy is more of a "hybrid appeal" rather than a true "habeas" collateral review proceeding. *Ex parte Alvarez*, ___S.W.3d ___, 2015 WL 1956254 at *4 (Tex. Crim. App. April 29, 2015) (Yeary, J. concurring). But that is not currently the law.

Even if it were, the presumptions still cut against relator's specific claims on habeas. Relator still carries the burden to prove his claim of ineffective assistance of counsel by a preponderance of the evidence. *See e.g. Ex parte Overton*, 444 S.W.3d 632, 640 (Tex. Crim. App. 2014) (restating well-established principle that an applicant carries the burden to overcome the strong presumption that trial counsel's conduct was reasonable). Suggesting that drawing adverse inferences from relator's silence unduly penalizes relator's assertion of (or reliance upon) his Fifth Amendment right against self-incrimination presupposes that he is entitled to post-conviction relief. Unlike the probation-revocation hearings at issue in

*Murphy* or *Chapman*, relator is the party bringing suit here. Use of his assertion of his Fifth Amendment right against self-incrimination or his compelled testimony does not jeopardize any existing liberty interest. And unlike the prison disciplinary hearing at issue in *Baxter*, the grant of use and derivative-use immunity removes any concern that the State might be able to use relator's habeas claim to coerce a confession for later use in a future criminal prosecution or on retrial in this case should this Court grant post-conviction relief.

Although not binding upon this Court, other jurisdictions have allowed questioning of a habeas corpus applicant along with a negative inference should he assert his Fifth Amendment right regarding future offenses.[11] Federal courts in Arizona, Missouri, and California as well as state courts in Alabama and West Virginia have allowed this practice over Fifth Amendment claims without correction from the United States Supreme Court.

---

[11] *See, e.g., Allen v. United States*, No. 4:07CV00027 ERW, 2011 WL 4729819, at *6 (E.D. Mo. Oct. 7, 2011) (not designated for publication) (allowing the State to depose a § 2254 petitioner after noting that a blanket assertion of the Fifth Amendment is appropriate only if the court concludes that the witness could legitimately refuse to answer all relevant questions); *Detrich v. Schriro*, No. CV 03–229-TUC-DCB, 2007 WL 177831 (D. Ariz Jan. 23, 2007) (allowing the State to call petitioner to testify at a hearing on his post-conviction writ of habeas corpus and authorizing the habeas court to draw an adverse inference from his silence); *Bean v. Calderon*, 166 F.R.D. 452, 455 (E.D. Cal. 1996) (allowing an adverse inference to be drawn from habeas applicant's refusal to put forth facts that were in his personal knowledge and might have supported his claim); *Nichols v. State*, No. E1998-00562-CCA-R3-PD, 2001 WL 55747, at *14 (Tenn. Crim. App. Jan. 19, 2001) (not designated for publication) (holding State properly called habeas petitioner to the stand during a post-conviction hearing because the petitioner had no Fifth Amendment claim because his conviction had become final years earlier); *State v. Click*, 768 So.2d 417, 419-22 (Ala. Crim. App. 1999), *cert. denied*, 121 S.Ct. 92 (2000) (holding inmate, whose conviction and sentence had been affirmed on direct appeal, had no Fifth Amendment right against self-incrimination in a hearing on his petition for post-conviction relief attacking his conviction); *State ex rel. Myers v. Sanders*, 526 S.E.2d 320 (W.Va. 1999) (allowing habeas court to draw an adverse inference from Petitioner's Fifth Amendment objection to questions propounded to him during a deposition in his post-conviction proceeding). *See also Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012) (recognizing that a defendant who seeks to litigate a particular post-conviction claim implicitly waives the Fifth Amendment to the extent necessary to allow the State a fair opportunity to defend against it provided that any information gained cannot be used in any subsequent proceedings).

And while some of these cases are unpublished, and therefore lack precedential value, we have relied upon unpublished precedent as evidence that a particular legal issue is, at best, "unsettled" such that there is no clear right to the extraordinary remedy of prohibition. *Simon*, 306 S.W.3d at 322.

Arguably, however, death-penalty cases should be treated differently because, unlike traditional habeas corpus in which a defendant is already serving his sentence as he sues for relief, the sentence in a death-capital case truly becomes final only upon execution. For example, the Supreme Court of New Mexico held that the State was precluded from deposing a death-penalty defendant regarding his communications with his attorney after the defendant filed a post-conviction writ of habeas corpus alleging ineffective assistance of counsel. *Allen v. LeMaster*, 267 P.3d 806, 807-08 (New Mexico 2011). The Court reasoned that the writ of habeas corpus was a continuing part of the criminal proceedings because it was mandated by state rules of criminal procedure. *Id.* at 811.

Of course, the New Mexico Supreme Court was very clear to specify that it was reaching this decision as a matter of state law rather than an application of the Fifth Amendment. *Id*. at 812 ("The reason those state and federal constitutional questions need not be resolved in this action is because the dispositive resolution to this case is explicitly provided by our established Rules of Criminal Procedure."). The holding turned on whether a New Mexico court rule specifically prohibiting the deposition of a criminal defendant applied to a post-conviction proceeding. *Id*. at 812. *Allen* provides no support for the proposition that the particular procedures for death-penalty writs of habeas corpus in New

Mexico mandate the applicability of the Fifth Amendment right against self-incrimination post-conviction. As non-binding authority, it doesn't command a particular interpretation of the Texas statutes, either.

Were we addressing the issue as matter of state law in the first instance, as the Supreme Court of New Mexico did, we could weigh precedent from different jurisdictions to settle the law in Texas based upon which cases we find persuasive.[12] But this issue does not come to us on direct appeal of a dismissal of a writ of habeas corpus, as it did the high court in New Mexico, and the extraordinary remedy of mandamus or prohibition is not a substitute for and cannot be used to perform the office of appeal. *State ex. rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994). At best, *Allen* further demonstrates that the law on this Fifth Amendment issue is unsettled particularly in light of the fact that the Supreme Court of New Mexico explicitly left it that way. *Cf. State ex rel. Myers v. Sanders*, 526 S.E.2d 320 (W.Va. 1999) (denying writ of prohibition to overturn circuit court's order that it could draw an adverse inference from Petitioner's Fifth Amendment objection to questions propounded to him during a deposition in his habeas corpus

---

[12] If that were the case, we could just as easily be persuaded by the decision from the Court of Criminal Appeals of Alabama in *State v. Click*, 768 So. 2d. 417 (Ala. Crim. App. 1999). There, the court of appeals granted mandamus relief to the State of Alabama and vacated a trial court's order prohibiting the State from calling the defendant to the witness stand in a post-conviction hearing on his application for writ of habeas corpus. *Click*, 768 So.2d at 422. The court reasoned that the defendant could not rely upon the Fifth Amendment because he voluntarily filed his post-conviction petition, and the possibility that answering questions regarding communications with his attorney would subject him to criminal liability was remote and improbable. *Id.* at 421. Notably, the United States Supreme Court denied the defendant's petition for writ of certiorari in that case. *Click v. Alabama*, 531 U.S. 834 (Oct. 2, 2000). But the standard for the extraordinary remedy of prohibition is not one of mere persuasion, the result must be positively commanded and so plainly prescribed under the law as to be free from doubt. *State ex rel. Hill v. Court of Appeals for Fifth Dist.*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001).

proceeding). A writ of prohibition is not the proper vehicle to settle unsettled law.

Additionally, we have already applied the doctrine of constructive waiver of the Fifth Amendment in cases in which the death penalty has been assessed. We recognized in *Lagrone* that, even if a defendant merely plans to introduce testimony from a psychiatric expert based upon an examination of a defendant, a trial court can compel his examination by a state-sponsored psychiatric expert despite his assertion of the Fifth Amendment. *Lagrone*, 942 S.W.2d at 611. We explained that "our sense of justice will not tolerate allowing criminal defendants to testify through the defense expert and then use the Fifth Amendment privilege against self-incrimination to shield themselves from cross-examination on the issues which they have put in dispute." *Id.* at 611. The possibility of a death sentence did not require an expansion of the protection afforded by the Fifth Amendment beyond its existing scope.

A similar rationale has been used in the context of a defendant seeking to overturn his conviction based upon ineffective assistance of counsel when his attorneys make representations regarding communications with the defendant.[13] In the past, we have relied, at least in part, upon a defendant's statements to his counsel as a basis for holding that trial counsel was reasonable in his abandonment of efforts to investigate possible mitigation

---

[13] Relator argues that, as a matter of policy, this type of constructive-waiver theory could have a dramatic chilling effect upon a defendant's willingness to communicate with his attorney. But the same could be said of requiring affidavits from trial counsel when a claim is raised regarding ineffective assistance of counsel. And regardless of how commendable or desirable the policy might or might not be, a trial court does not have a ministerial duty to rule a particular way just because it would be good policy. *Rosenthal*, 98 S.W.3d at 198 ("Mandamus does not lie to correct a trial court's ruling on an "unsettled or uncertain" question of law.").

evidence. *Ex parte Martinez*, 195 S.W.3d 713, 729 (Tex. Crim. App. 2006). And we have suggested, albeit in dicta, that a defendant's communication with his attorney endorsing a strategy of attorney non-participation might suggest that the defendant waived the right to effective assistance of counsel. *Cannon v. State*, 252 S.W.3d 342, 352 (Tex. Crim. App. 2008). While this statement was not integral to the holding in *Cannon*, it reflects that there is no established bar to at least some inquiry of a criminal defendant by a judge into whether a defendant approved of trial counsel's brinkmanship when the defendant raises a claim of ineffective assistance of counsel.[14] And we have recognized that a defendant who brings a claim of ineffective assistance of counsel necessarily waives his attorney-client privilege, allowing inquiry into a defendant's communications with counsel. *Thomas*, 428 S.W.3d at 106. There is at least an argument to be made that relator has opened himself up to questioning by proffering trial counsel's assertions that relator did not approve of trial counsel's refusal to present any punishment evidence in relator's case. *Ex parte Tiede*, 448 S.W.3d 456, 470 n. 36 (Tex. Crim. App. 2014) (Keller, P.J. dissenting) ("Applicant did not testify at the habeas hearing. It could be argued that he ought to testify and subject himself to cross-examination before we give any credence to his claims. Although a defendant has

---

[14] This Court has pointed to this type of judicial inquiry to determine whether a waiver of a particular right is knowing and voluntary. *See, e.g., Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) ("The trial judge is responsible for determining whether a defendant's waiver [of the Sixth Amendment right to counsel] is knowing, intelligent, and voluntary."). This Court has also held that a trial court must make a discrete inquiry, outside the presence of the jury, into the reasonableness of a witness's assertion of the right against self-incrimination outside the presence of the jury. *Walters v. State*, 359 S.W.3d 212, 216 (Tex. Crim. App. 2011). But none of these question-and-answer sessions have been extended to allow the State to call a criminal defendant to the stand for direct examination. The holding in *Cannon* certainly does not address that type of procedure.

a right not to testify guaranteed by the Fifth Amendment right against self-incrimination, appellant has already testified at the punishment stage of trial, and it is arguable that he has indirectly testified on habeas through [expert] testimony and the documents submitted by other experts."). But of course, that is not currently the law either.

Both relator and the State agree that we have never specifically held that merely bringing a claim of ineffective assistance waives the Fifth Amendment right. And relator's use of his own testimony is considerably more indirect than the situation presented in *Lagrone*. But we are not called upon to decide whether the scope of our prior precedents logically extend to cover this situation. Instead, we are called upon to decide whether the trial court was asked to make a judicial decision or a ministerial one regarding the scope of the Fifth Amendment. Prohibition will not lie unless the act is positively commanded and so plainly prescribed under the law as to be free from doubt. *State ex rel. Hill v. Court of Appeals for Fifth Dist.*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001). If the trial court was merely asked to decide a novel issue of unsettled law, prohibition is inappropriate. *Simon*, 306 S.W.3d at 322.

Relator's case is analogous to the situation presented in *Simon v. Levario*. There, the trial court issued an order compelling the relator to undergo a state-sponsored psychiatric exam over a Fifth Amendment challenge. *Simon*, 306 S.W.3d at 320. The relator filed an application for a writ of prohibition claiming that *Lagrone* applied only to cases in which the State sought the death penalty. *Id.* at 321. The State responded that, even though we had not decided whether *Lagrone* applied outside of the context of death-penalty cases, the legal

principle announced in *Lagrone* could be extended to any criminal case. *Id.* Without deciding the issue on the merits, we explained:

> If what we said in *Lagrone* is not limited in principle to the type of psychiatric evidence presented at the punishment phase of a capital murder death-penalty trial, it may not be limited in principle to the punishment phase of a capital murder death-penalty trial, or even to death-penalty cases at all. Accordingly, we cannot say under the circumstances of this case–and particularly in view of the tight restrictions the trial court imposed on the State in its order–that the relator has established a clear right to be insulated from examination by a State's psychiatric expert. In granting the State's motion in this case, the trial court exercised a manifestly judicial (and not a ministerial) function. Such an "accomplished *judicial* act" is not subject to the extraordinary remedy of prohibition.

*Simon*, 306 S.W.3d at 322. Just as in *Simon*, the trial court in this case was called upon to make a judicial decision on the scope of the Fifth Amendment right against self-incrimination. We expect trial court judges to make difficult legal decisions on novel arguments like this one all the time. That we might disagree with the result does not make the trial court's decision a ministerial one.

The central standard for the Fifth Amendment's application has been whether the claimant is confronted by substantial and "real" risk of incrimination regardless of the nature of the proceedings. *Marchetti v. United States*, 390 U.S. 39, 53 (1968). This Court does not hold that the Fifth Amendment would never be applicable in a post-conviction habeas proceeding simply because of the nature of the proceeding. Such a definitive stance would be inappropriate in a writ of prohibition case. Rather, we hold only that, under the circumstances presented in this case, prohibition relief is inappropriate. We reach this conclusion because the law is at least unsettled as to whether relator truly faces any

substantial or real risk of further criminal liability given the nature of relator's specific claim of ineffective assistance of counsel, the strong limits placed on the scope of questioning by the trial court, and the grant of use and derivative-use immunity that prevents the State from using any testimony or information gained from this hearing in any subsequent proceeding. Consequently, relator has not established he has a clear right to the relief he seeks. We deny relator's petition for writ of prohibition.

DELIVERED: November 4, 2015
Publish