

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-95,689-01

### IN RE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Relator

### ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS AND PETITION FOR WRIT OF MANDAMUS IN CAUSE NO. 69441 IN THE 34TH JUDICIAL DISTRICT COURT EL PASO COUNTY

**WALKER, J., filed a concurring and dissenting opinion.**

### CONCURRING AND DISSENTING OPINION

Respondent, the judge of the 34th District Court in El Paso County, entered an order directing Relator, the Texas Department of Criminal Justice (TDCJ), to allow an outside doctor's staff into one of TDCJ's prisons, so that those personnel could access the Real Party in Interest, Tony Ford, and draw his blood for testing (the "Access Order"). Today, a majority of this Court concludes that TDCJ is entitled to conditional mandamus relief, and the Court orders Respondent to rescind the Access Order. Mandamus relief is appropriate, so says the majority, because in their view the convicting court did not have jurisdiction to enter the Access Order because Ford does not have any

active post-conviction pleadings pending before that court. While that is true, Ford is clearly working towards preparing and filing an application for habeas corpus relief, and I believe the convicting court had the implicit authority to enter the Access Order so Ford could properly investigate his claims. Moreover, the petition before us asks for a writ of mandamus, which would be proper only if it is clear that the convicting court lacked the authority. Yet, there is no controlling precedent that *clearly* demonstrates that the Access Order was unauthorized.

Accordingly, I respectfully dissent from the Court's grant of conditional mandamus relief as to the convicting court's Access Order. I concur, however, with the Court's conclusion that TDCJ lacks standing to challenge the convicting court's separate order requiring El Paso County to provide funding for testing.

## I — Procedural History

Ford was convicted of capital murder and sentenced to death in July 1993. *Ford v. State*, 919 S.W.2d 107, 109 (Tex. Crim. App. 1996). On direct appeal, this Court affirmed Ford's conviction and sentence. *Id.* at 118. Mandate issued April 19, 1996.

Ford has since pursued several post-conviction remedies. In February 1998, Ford filed in the convicting court his initial state habeas application under Texas Code of Criminal Procedure article 11.071, which this Court ultimately denied. *Ex parte Ford*, No. WR-49,011-01 (Tex. Crim. App. Sept. 12, 2001) (per curiam, not designated for publication). Ford filed a second article 11.071 application in this Court in November 2005, but when the convicting court granted DNA testing under Texas Code of Criminal Procedure Chapter 64, we dismissed the application without prejudice. *Ex parte Ford*, No. WR-49,011-02, 2005 WL 3429243, at *1 (Tex. Crim. App. Dec. 14, 2005) (per curiam, not designated for publication). Years later, in September 2018, Ford filed a third

article 11.071 application, which we dismissed as an abuse of the writ under article 11.071, § 5. *Ex parte Ford*, No. WR-49,011-03, 2019 WL 4318695, at *1 (Tex. Crim. App. Sept. 11, 2019) (per curiam, not designated for publication). As of the date of this opinion, Ford has no pending article 11.071 applications or Chapter 64 motions.

On March 27, 2024, Ford filed in the convicting court a "Defense Motion for Funding for Genetic Testing." Ford alleged that if he could obtain a specific kind of genetic testing, he could prove that he did not personally shoot the victim in the underlying capital murder case. Ford explained that he had already found a doctor and lab willing to facilitate and conduct the testing, but needed funding from the convicting court. In light of Ford's motion, Respondent Judge William E. Moody of the 34th Judicial District Court of El Paso County, Texas, entered an order dated March 27, 2024, directing:

(1)     "El Paso County pay to [Ford's doctor] . . . the amount of $3600.00 for the collection and genetic assessment of a blood sample from Mr. Ford for [genetic testing]"; and

(2)     "the warden of the Polunsky Unit-TDCJ allow access to Mr. Ford . . . by personnel from [the doctor's] office for the purpose of drawing the necessary blood sample for this testing."

Relator in this proceeding, TDCJ, seeks mandamus relief from both (1) the "Funding Order" and (2) the Access Order. TDCJ argues that Respondent's plenary jurisdiction ended long ago and Ford does not currently have an active case or pleading under article 11.071 or Chapter 64, and it points to *In re Medina*, in which we noted that:

this Court has discussed the ministerial duty in terms of the respondent's authority or jurisdiction: "[i]f a trial judge lacks authority or jurisdiction to take particular action, the judge has a ministerial duty to refrain from taking that action, to reject or overrule requests that he take such action, and to undo the action if he has already taken it."

4

*In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015) (quoting 43B GEORGE E. DIX & JOHN

M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 61.29 (3d ed.

2011)). From this language, the argument goes that the convicting court had no jurisdiction over

Ford's case, and the Funding and Access Orders were entered by a court lacking jurisdiction, making

them subject to this Court's mandamus authority.

## II — Access Order

To obtain mandamus relief from the Access Order, TDCJ must show that (1) it has no

adequate remedy at law from the Access Order, and (2) Respondent has a "ministerial" duty to

rescind it. *See In re State ex rel. Best*, 616 S.W.3d 594, 599 (Tex. Crim. App. 2021). Ford concedes

that TDCJ has no adequate remedy at law, and the issue turns on the "ministerial duty" prong. Again,

"[i]f a trial judge lacks authority or jurisdiction to take particular action, the judge has a 'ministerial'

duty to refrain from taking that action, to reject or overrule requests that he take such action, and to

undo the action if he has already taken it." *Medina*, 475 S.W.3d at 298. For the purposes of the

petition for writ of mandamus here, TDCJ must demonstrate that the convicting court judge *clearly*

lacked jurisdiction or authority to enter the Access Order. In other words, the convicting court's duty

to rescind the Access Order—because it did not have the jurisdiction to order it—"must be

'positively commanded and so plainly prescribed' under the law as 'to be free from doubt.'" *State*

*ex rel. Hill v. Ct. of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001) (quoting

*Buntion v. Harmon*, 827 S.W.2d 945, 947 n.2 (Tex. Crim. App. 1992)).

As we recently explained:

a trial court must derive its jurisdiction from either the Texas Constitution or
legislative enactments. When a conviction has been affirmed on appeal and mandate
has issued, general jurisdiction is not restored in the trial court. A trial court can

> obtain postconviction jurisdiction over a matter statutorily—for example, to set an execution date, conduct DNA testing, or determine whether an inmate is competent to be executed. But the statutes bestowing jurisdiction over these matters also define the scope of that jurisdiction. And even when a trial court has jurisdiction over a matter, it may lack authority to take a certain action.

*In re State ex rel. Ogg*, 692 S.W.3d 481, 484–85(Tex. Crim. App. 2024) (per curiam) (internal citations omitted) (citing *Staley v. State*, 420 S.W.3d 785, 795 (Tex. Crim. App. 2013)).

TDCJ correctly points out that the convicting court's plenary jurisdiction over Ford's case ended long ago. Furthermore, all of Ford's prior article 11.071 applications and Chapter 64 motions have been disposed of, and the convicting court has no active article 11.071 or Chapter 64 pleadings in front of it.

On the other hand, however, *future* active pleadings are not possible without investigation and due diligence on the part of the writ applicant and his counsel. An argument can be made that Code of Criminal Procedure article 11.071 provided the convicting court with implicit authority to enter the Access Order so that Ford could have his blood drawn and analyzed to develop his prospective claim for post-conviction relief in a future application for writ of habeas corpus. At the very least, there is a lack of binding precedent to show an indisputable absence of authority on the convicting court's part to enter such an order, such that mandamus relief would be proper. *See State ex rel. Young v. Sixth Jud. Dist. Ct. of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (the ministerial act requirement "is satisfied if the relator can show he has 'a *clear* right to the relief sought'—that is to say, 'when the facts and circumstances dictate but one rational decision' under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."); *see also Simon v. Levario*, 306 S.W.3d 318, 321 (Tex. Crim. App. 2009) (a clear right to relief means that the law is "definite, unambiguous, and unquestionably

applies to indisputable facts of the case.").

Indeed, that argument has been previously made. In an earlier, similarly-named case, *In re Texas Department of Criminal Justice*, the convicting court entered an *ex parte* discovery order directing TDCJ to turn over specified inmate records to the Office of Capital and Forensic Writs, which was assisting in the preparation of an article 11.071 habeas application for a death-sentenced individual. *In re Tex. Dep't Crim. Just.*, No. WR-91,688-01 2023 WL 4003792, at *1 (Tex. Crim. App. June 14, 2023) (not designated for publication). Determining that the discovery order was unauthorized because it was *ex parte*, this Court conditionally granted mandamus relief. *Id.* at *2. Judge Slaughter disagreed in a published dissent, and she would have found that the convicting court had implicit authority to facilitate discovery and investigation of claims under article 11.071, even at the pre-filing stage. *In re Tex. Dep't of Crim. Just.*, 668 S.W.3d 375, 382–84 (Tex. Crim. App. 2023) (Slaughter, J., dissenting).

Unlike that former *TDCJ* case, the case before us today does not involve *ex parte* orders and requires an examination of a convicting court's authority to facilitate a prospective habeas applicant's pre-filing investigation. "The purpose of a writ of habeas corpus is to obtain a speedy and effective adjudication of a person's right to liberation from illegal restraint." *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002). Pursuant to that goal, article 11.071 requires applicants to be represented by competent counsel, and it provides for the appointment of competent counsel if the applicant is indigent. TEX. CODE CRIM. PROC. Ann. art. 11.071, § 2. It requires that competent counsel, "[o]n appointment," to "investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus." *Id.* § 3(a). It also permits counsel to submit requests for prepayment or

reimbursement of expenses, "including expert fees." *Id.* § 3(b)–(d). These statutory provisions are "built upon the premise that a death row inmate *does* have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute." *Kerr*, 64 S.W.3d at 419 (emphasis in original).

Although article 11.071 does not *expressly* authorize a convicting court to enter orders facilitating the investigation of potential claims, our precedent nevertheless recognizes that a convicting court may have *implicit* authority to take actions not expressly authorized if they are in furtherance of the statute's jurisdictional purpose. *See State v. Holloway*, 360 S.W.3d 480, 487–88 (Tex. Crim. App. 2012), *abrogated on other grounds by Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014), (addressing concept of implicit authority in context of post-conviction DNA proceedings under Code of Criminal Procedure Chapter 64). We previously explained:

> In addition to specific power to act conferred by constitutional provision, statute, or common law, all courts have inherent authority to take certain actions. In *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979), our sister court noted that in addition to express grants of judicial power, a court has inherent judicial power, which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity. Courts may also have implied authority to act, arising from specific grants of power.
>
> In sum, a court may take a particular action only if that action is authorized by constitutional provision, statute, or common law, or the power to take the action arises from an inherent or implied power.

*State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991); *see also* TEX. GOV'T CODE Ann. § 21.001(a) (titled "Inherent Power and Duty of Courts," and providing "[a] court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction."). But, that inherent or implicit authority is not unlimited; "any acts undertaken under the guise of 'implicit

authority' may be taken only in furtherance of some other action for which there is an explicit grant of jurisdiction." *Holloway*, 360 S.W.3d at 488; *see also id.* (identifying the "jurisdictional purpose" of Chapter 64, to determine the limits of implicit authority thereunder).

Here, article 11.071's apparent jurisdictional purpose—to provide capital habeas applicants with procedural mechanisms to ensure a single full and fair opportunity to litigate their post-conviction claims—is furthered by the convicting court's ability to enter orders in the pre-filing stage. Section 3 of the statute mandates that appointed counsel "shall investigate expeditiously" both the "factual and legal grounds" for relief *before* filing the application. Tex. Code Crim. Proc. Ann. art. 11.071 § 3(a). Based on counsel's thorough investigation of potential claims, we have held that counsel is required to plead "specific facts" in support of relief in the application, rather than mere "conclusory allegations." *See Ex parte Medina*, 361 S.W.3d 633, 637–38 (Tex. Crim. App. 2011) (per curiam). But, if counsel is unable to obtain confidential, non-publicly available information without a court order, then how can counsel possibly "investigate expeditiously" all the potential grounds for relief? To hold that a trial judge lacks implicit authority to facilitate counsel's investigation of claims at the pre-filing stage sets up a Catch-22 for capital habeas applicants—they are required to plead specific facts in the application, but they have no power to compel any third parties to actually comply with their factual investigation that might support those claims. Given the broad purposes of article 11.071 and the overall structure of the statute, a convicting court's pre-filing order does not clearly and indisputably exceed the permissible scope of implicit authority under the statute.

Of course, Ford already filed his initial habeas application, so some of the special concerns that attach to an initial habeas application and the importance of affording an applicant his one "full

bite" at the apple are not implicated here. Instead, because Ford has already had his initial bite, the statutory scheme says he cannot have another. *See* TEX. CODE CRIM. PROC. Ann. art. 11.071, § 5(a) ("If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits or grant relief based on the subsequent application . . . ."). While the convicting court has the implicit authority to ensure that a habeas applicant gets as-good-of-a-bite-as-he-can-get on his initial application, does the convicting court have the same authority to facilitate pre-filing investigation for a subsequent writ application, if such an application is statutorily barred and the applicant presumably gets no more bites?

One only needs to keep reading that very same statute to see that there is the possibility for another bite; there are exceptions to the § 5 subsequent writ bar:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

TEX. CODE CRIM. PROC. Ann. art. 11.071, § 5(a). To overcome the statutory bar on subsequent writs

and receive consideration of his claim on the merits, a capital habeas applicant would need to present both argument and facts showing that he fits within one of these exceptions. But, how can Ford ever hope to satisfy the pleading burden that § 5(a) plainly imposes if his new claim cannot be factually developed and investigated since he cannot have his blood drawn while incarcerated without a court order allowing access?

The majority suggests that an initial habeas applicant should go ahead and file a habeas application, so long as he can make a prima facie showing, rather than prove his entire case. Indeed, in such a prima facie showing, the majority reaffirms that the applicant must allege sufficient specific facts that would entitle him to relief, and those facts do not need to be proven at that time. Yet, how would an applicant allege sufficient specific facts that, if proven, establish his right to relief if he does not know what the facts are? He has ideas, surely, but is the Court signaling that conclusory and bare assertions about what might be out there would be enough for a habeas application, so long as that speculation would get him across the finish line?

As for an applicant considering a subsequent habeas application, such as Ford, the majority suggests that he also should have gone ahead and filed his subsequent habeas application, and in that subsequent application essentially incorporate the discovery request that would then later yield, potentially, the facts. The majority also reminds subsequent applicants such as Ford, however, that the subsequent application must allege why the application gets past the subsequent writ bar of article 11.071, § 5, such as why the evidence was previously unavailable. With such a pleaded application, this Court could then consider whether the application is procedurally barred and, if not, whether to remand the case to the convicting court for factual development. Yet, how would an applicant such as Ford make the required prima facie showing that there are new facts when he

supposedly must seek discovery of those very facts in the same pleading? At the moment he files the subsequent application and before the convicting court obtains jurisdiction and therefore the authority to order discovery under the majority's rule, he does not know what the facts actually are.

I would have thought it surely was not the Legislature's intent, in creating the exceptions to the subsequent writ bar, for capital habeas applicants to plead speculative conclusions about how their case meets an exception to the subsequent writ bar, solely so the applicant can get his foot in the door and begin the process of discovery and investigation, possibly through the use of orders entered by the convicting court. But, as I understand it, the majority's approach would greatly loosen the pleading standard for habeas applications. An applicant could hereafter plead any theory about why he is entitled to habeas relief, without even a scintilla of evidence that would support the theory, so long as he has a good faith belief that he might be right. And, a subsequent applicant could plead a theory about what new evidence is out there and a theory about why that evidence was previously unavailable, so long as he also has a good faith belief that such evidence exists. And, then after discovery commences and he finds out what actually is out there, he would then need to file a subsequent application alleging claims to relief based on what he found out from his previous application, filed only in the name of obtaining discovery in the first place. Or, if this Court be so generous, allow him to amend the plausible-theory application to plead the facts, which may be drastically different than what was previously alleged.

Instead of preventing fishing expeditions altogether, we would nevertheless allow fishing expeditions so long as the habeas applicant pleads, to this Court, his fish story.

Rather than greatly loosening the pleading requirements for initial and subsequent habeas applications and eschewing established practice requiring applicants plead "sufficient specific facts,"

I would simply recognize that the statutory scheme expects applications that have been thoroughly investigated before filing, and intervention or assistance from the convicting court in the form of discovery or access orders may be necessary to prepare a properly pleaded writ application, initial or subsequent. I would hold that Respondent therefore had the implicit authority to facilitate Ford's investigation of potential claims for a possible subsequent writ application, and the fact that Ford has not yet filed a subsequent writ application should not be dispositive. Accordingly, I believe the Access Order in this case was not made without authority or jurisdiction, and mandamus relief is therefore unwarranted.

Two additional considerations reinforce my conclusion. First, broadly speaking, principles of fundamental fairness conflict with a rule categorically disallowing convicting courts from facilitating factual investigation of prospective post-conviction claims from death-sentenced individuals. The Supreme Court:

> has long recognized that when a State brings its judicial power to bear . . . on [a] defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where . . . a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). Consequently, "a criminal trial is fundamentally unfair if the State proceeds against [a] . . . defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Id.* at 77. "The consistent theme" is "[m]eaningful access to justice," and "fundamental fairness entitles . . . defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Id.* at 77 (quoting *Ross v. Moffitt*, 417 U.S. 600, 612 (1974)). Accordingly, defendants must be provided "'the basic tools of

an adequate defense or appeal.'" *Id.* (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)).

Although the specific context of *Ake*—preparation for criminal trial—is different from the circumstances before us, the underlying rationale applies. "[T]his principle of meaningful participation" extends to "quasi-criminal" proceedings. *Id.* at 76 (citing *Little v. Streater*, 452 U.S.1 (1981)). Principles of fundamental fairness require that a habeas applicant be afforded a fair opportunity to present his claims. *See Ake*, 470 U.S. at 76. Here, as in *Ake*, a litigant whose liberty is at stake has no means of fully preparing his case without a court order.

Second, in support of its argument for standing, TDCJ emphasizes its interest in the secure operation of its prisons, and it asserts that being forced to provide outside medical personnel with access to an inmate on death row impacts that interest. Indeed, "prisons have compelling interests in both protecting those attending an execution and preventing them from interfering with it . . . ." *Ramirez v. Collier*, 595 U.S. 411, 431 (2022). But, it is unclear how allowing a medical professional into the prison to take Ford's blood for genetic testing poses a risk that justifies TDCJ's current position. Medical professionals routinely assist inmates, including the drawing of blood samples, and TDCJ undoubtedly has security protocols for allowing and supervising visitors to its facilities. While the level of intrusion into TDCJ's interests caused by the Access Order is a separate issue from the question of whether the convicting court had the authority to enter it, the degree of intrusion seems quite minimal, constituting an additional circumstance that weighs against the granting of extraordinary mandamus relief here.

### III — Conclusion

In conclusion, I believe that TDCJ is not entitled to mandamus relief. TDCJ has not shown that the convicting court had a ministerial duty to undo the Access Order because TDCJ has not

shown that the convicting court *clearly* lacked the authority to enter the Access Order. Instead, article 11.071 affords a convicting court judge the implicit authority to enter orders facilitating the factual investigation of potential post-conviction claims for initial and subsequent writs, even in the pre-filing stage. Such orders further both article 11.071's purpose and notions of fundamental fairness. In any event, this Court has never squarely held that the statute does not afford a convicting court the discretion to enter such orders.

I would deny mandamus relief. I concur in part as to the Court's holding on the issue of standing as it pertains to the Funding Order, but I respectfully dissent to the majority's granting of conditional mandamus relief as to the Access Order.


Filed: March 26, 2025
Publish